IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT GITLIN,<br>　　　　Plaintiff,<br>　　v.<br>AMCO INSURANCE COMPANY,<br>　　　　Defendant. | Case No. 18-cv-07793-CRB<br><br>**ORDER REMANDING CASE** |

The Court lacks subject-matter jurisdiction over this case, and therefore REMANDS it to state court.

## I.　BACKGROUND

Plaintiff Robert Gitlin ("Gitlin") initiated an insurance claim after his property was among the more than 500 homes destroyed by the Redwood Valley Complex Fire in October 2017. Mtn. for Declaratory Relief (dkt. 17) at 2–3. At the time, Gitlin had a fire insurance policy with Defendant AMCO Insurance Company ("AMCO"). Id. AMCO's investigation into Gitlin's losses included taking a recorded statement, or interview, from Gitlin soon after the fire occurred. Compl. (dkt. 1 Ex. A) ¶¶ 6–8; Def. Opening Brief (dkt.16) at 2. Gitlin subsequently asked AMCO to provide him with copies of all claim-related documents pursuant to California Insurance Code §§ 2071 and 2071.1, which require that insurers produce copies of most claim–related documents upon request. Cal. Ins. Code § 2071; Compl. ¶ 8. AMCO produced some documents but refused to turn over a copy of the recorded statement. Compl. ¶ 8.

Gitlin brought suit against AMCO in state court, seeking declaratory and injunctive relief based on violations of California Insurance Code §§ 2071 and 2071.1. Id. ¶¶ 10–22.

Gitlin does not seek damages. Rather, he asks for a declaration that the recorded interview is either a "claims-related document" or an "examination under oath" to which he is statutorily entitled, injunctive relief consisting of AMCO producing the recorded interview before it can examine him, and attorneys' fees. Id. at 6–7. Defendants removed the case to this Court, asserting that there is diversity jurisdiction. See Notice of Removal (dkt. 1) at 1, 3–6. There is no other litigation underway between these parties. Def. Reply to OSC (dkt. 23) at 4.

On May 16, 2019, this Court ordered AMCO to show cause as to why this suit should not be remanded to state court because of an inadequate amount in controversy. OSC (dkt. 19) at 3. AMCO responded. See Def. Reply to OSC. Gitlin also responded. See Pltf. Reply to OSC (dkt. 24).

## II.  LEGAL STANDARD

A defendant who seeks to remove a case to federal court must file a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). This "short and plain statement" requirement mirrors the one found in Rule 8(a)(1) of the Federal Rules of Civil Procedure, the general pleading rule for cases filed in federal court. The use of the same language is "[b]y design," the Supreme Court has explained: "Congress, by borrowing the familiar 'short and plain statement' standard from Rule 8(a), intended to 'simplify the "pleading" requirements for removal' and to clarify that courts should 'apply the same liberal rules to removal allegations that are applied to other matters of pleading.'" Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 553 (2014) (quoting H.R. Rep. No. 100–889, at 71 (1988)).

At issue in this case is diversity jurisdiction. See Notice of Removal at 1. District courts have subject-matter jurisdiction over civil cases where (1) the matter "is between . . . citizens of different States," and (2) the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1). Consistent with the framework outlined above, "[t]he party seeking to invoke the district court's diversity jurisdiction always bears the burden of both pleading and proving diversity jurisdiction."

NewGen LLC v. Safe Cig, LLC, 840 F.3d 606, 613–14 (9th Cir. 2016).

Subject-matter jurisdiction must exist when a case is first filed. A federal court that is considering whether it has jurisdiction on the basis of diversity must therefore evaluate "the state of things at the time of the action brought." Rockwell Int'l Corp. v. United States, 549 U.S. 457, 473 (2007) (quoting Mullan v. Torrance, 22 U.S. 537, 539 (1824)). This means examining whether the parties' citizenship was diverse, and whether the amount in controversy exceeded $75,000 at the time the case was originally filed.

### III. DISCUSSION

#### A. Diversity of Citizenship

Diversity jurisdiction requires "complete diversity": "each plaintiff must be of a different citizenship from each defendant." Grancare, LLC v. Mills ex rel. Thrower, 889 F.3d 543, 548 (9th Cir. 2018). Plaintiff Gitlin is a citizen of California, because that is the place of his domicile. See Compl. ¶ 1. Defendant AMCO is a citizen of Delaware and Iowa, because it is incorporated in Delaware and has its principal place of business in Iowa. See 28 U.S.C. § 1332(c)(1); Pardini Decl. (dkt. 1, Doc. 1–2, Ex. A) ¶ 2. Thus, the parties to this case are not citizens of the same state. Complete diversity of citizenship exists.

#### B. Amount in Controversy

When removal is based on diversity jurisdiction under 28 U.S.C. § 1332(a), the defendant bears the burden of establishing that the amount in controversy exceeds $75,000. See Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). Consistent with the pleading requirements outlined above, the Supreme Court has explained that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee, 135 S. Ct. at 554.

Gitlin does not challenge AMCO's assertion that the amount in controversy exceeds $75,000. See generally Pltf. Reply to OSC. Nevertheless, a district court may sua sponte raise the issue of subject-matter jurisdiction. See Galt G/S v. Hapag-Lloyd AG, 60 F.3d 1370, 1373 (9th Cir. 1995). The Supreme Court instructs that "[w]hen a defendant's

3

assertion of the amount in controversy is challenged . . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Dart Cherokee, 135 S. Ct. at 554.

The parties' arguments over the amount in controversy in this case turn on (1) the amount of money at stake, and (2) attorneys' fees.

### 1. Amount of Money at Stake

Gitlin and AMCO disagree as to whether the amount of money at stake in this case satisfies the $75,000 amount in controversy requirement. AMCO contends that it does because "[t]he relief sought by Plaintiff cannot be divorced from its effect and cost to AMCO." Def. Reply to OSC at 5. According to AMCO, the amount in controversy in this case is "the amount at stake in the underlying litigation," which includes "any result of the litigation." Id. (citing to Gonzales v. CarMax Auto Superstores, LLC, 840 F.3d 644, 648–49 (9th Cir. 2016)).

This case, however, is different from Gonzales and the other cases upon which AMCO relies. See Def. Reply at 3. The amount at stake in the underlying litigation in those three cases was clearly defined. First, in Gonzales, this Circuit found that the controversy was worth over $75,000 because the plaintiff sought damages, injunctive relief, and attorneys' fees from a car dealer that violated state consumer protection laws. 840 F.3d at 648–49. Plaintiff sought $49,000 in actual damages, $25,000 in punitive damages, rescission of the original car purchase contract, and injunctive relief "to restore any monies wrongfully obtained by CarMax to Plaintiff." Notice of Removal at 5–6; Gonzales v. CarMax Auto Superstores, LLC, 2013 U.S. Dist. LEXIS 189140 (C.D. Cal. Dec. 30, 2013) (Dkt. 1). Plaintiff therefore requested damages surpassing the amount in controversy requirement. See Gonzales, 840 F.3d at 649.

Second, in BEM I, LLC v. Anthropologie, Inc., the Seventh Circuit found that the amount in controversy stemming from damages and injunctive relief in a commercial lease dispute exceeded $75,000. 301 F.3d 548, 553 (7th Cir. 2002). Although damages were $48,197.23 and alone would not have met the amount in controversy threshold, the value

4

of injunctive relief was the nearly $3 million at stake in the commercial lease. BEM I, LLC v. Anthropologie, Inc., 1999 U.S. Dist. LEXIS 19478, *7 (N.D. Ill. Dec. 13, 1999), aff'd 301 F.3d 548 (7th Cir. 2002). Thus, the amount in controversy was well over $75,000.

Third, in In re Brand Name Prescription Drugs Antitrust Litigation, the Seventh Circuit determined that damages per plaintiff plus injunctive relief in a price-fixing class action against pharmaceutical manufacturers and wholesalers did not meet the jurisdictional minimum. 123 F.3d 559, 610 (7th Cir. 2002). The plaintiffs in the case "were careful to plead that the damages sought by each did not exceed $50,000 [the minimum amount in controversy required at the time]" because "they did not want their case removed to federal court." Id. at 607. The court found this reasonable, considering "you would have to buy an awful lot of expensive drugs to run up a bill the overcharge portion of which alone was more than that amount." Id. Injunctive relief was also inadequate, because an injunction in favor of any one plaintiff would be unlikely to impose a "heavy cost" on any one defendant. Id. at 610. The case therefore failed to meet the required amount in controversy.

In contrast, Gitlin does not ask the Court to resolve the underlying insurance dispute between the parties, and seeks no damages related to that dispute. See Pltf. Reply to OSC at 2. Instead, Gitlin asks for a declaration that the recorded interview is either a "claims-related document" or an "examination under oath" to which he is statutorily entitled, injunctive relief consisting of AMCO producing the recorded interview before it can examine him, and attorneys' fees. Compl. at 6–7. The cost for AMCO to provide Gitlin with a copy of the interview—and therefore the amount at stake in this case—is likely to be a few hundred dollars, if that.

AMCO argues, though, that the declaratory and/or injunctive relief plaintiff seeks would "disrupt [its] investigation of the underlying claim and will have a significant and material impact on AMCO's coverage determination." Def. Reply to OSC at 4. But the larger coverage dispute between the parties is not part of the case before this Court.

5

AMCO does not explain the connection between the relief sought in this case and the larger insurance coverage determination—it certainly does not do so well enough to persuade the Court that the amount in controversy exceeds $75,000. Presumably, AMCO is concerned that if it is forced to give a recording or transcript of the interview to Gitlin, then Gitlin could tailor his answers in a future deposition to conform with the answers he provided in the interview. Yet even this theory is highly speculative, as it is not clear what Gitlin's testimony would be, whether he would testify inconsistently with his recorded interview, or what impact the recorded interview would have on his testimony.

Therefore, the amount of money at stake in this controversy is minimal.

### 2. Attorneys' Fees

The other asserted basis for satisfying the amount in controversy here is attorneys' fees. When state law "authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." Galt G/S, 142 F.3d at 1156. The Circuit has determined that "'there is no question that future [attorneys' fees] are 'at stake' in the litigation,' and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy." See Fritsch v. Swift Transp. Co. of Ariz., LLC, 899 F.3d 785, 794 (9th Cir. 2018).

Gitlin and AMCO agree that if Gitlin is successful in this suit, his claim for attorneys' fees will exceed $75,000. Pltf. Reply to OSC at 3; Def. Reply to OSC at 5–6. While AMCO offers no support for this claim, Gitlin cites to California Code of Civil Procedure § 1021.5. Pltf. Reply to OSC at 3.

California Code of Civil Procedure § 1021.5 is a fee-shifting statute that entitles a party to an award of attorneys' fees when that party has succeeded in an action that results in the enforcement of an important right affecting the public interest. Cal. Code Civ. Proc. § 1021.5. The purpose of awarding attorneys' fees per § 1021.5 is to encourage litigation that transcends individual financial interests, and furthers issues of societal importance. Satrap v. Pacific Gas & Elec. Co., 42 Cal. App. 4th 72, 49 (1996). "[T]he legislature did not intend to authorize an award of attorney [sic] fees in every case involving a statutory

violation." Woodland Hills Residents Assn., Inc. v. City Council, 23 Cal. 3d 917, 939 (1979).

The Court is not persuaded that Gitlin has satisfied any of the three factors necessary to obtain fees under § 1021.5. See California Licensed Foresters Assn. v. State Bd. of Forestry, 30 Cal. App. 4th 562, 569 (1994) (plaintiff must show that the litigation: (1) served to vindicate an important public right; (2) conferred a significant benefit on the general public or a large class of persons; and (3) imposed a financial burden on plaintiffs that was out of proportion to their individual stake in the matter).

Moreover, even if the Court were inclined to award Gitlin attorneys' fees under § 1021.5, the Court is skeptical that the fees in this narrow legal matter would reach $75,000. Gitlin has not provided the Court with any evidence to support his assertion that they would. He offers no data on his attorneys' hourly rates, or on the number of hours his attorneys have spent on this case to date or anticipate spending in the future. The Court has no way of determining with any confidence that attorneys' fees would reach $75,000.

### 3. Total Amount in Controversy

Because there are no actual or punitive damages in this case, the total amount in controversy here is the minimal cost of effectuating the injunctive relief plus attorneys' fees. The Court is unpersuaded that the sum of these two items approaches $75,000.

## IV. CONCLUSION

While complete diversity of citizenship exists, the amount in controversy requirement is not satisfied. The Court has no subject-matter jurisdiction over this case, and therefore REMANDS it to state court.

**IT IS SO ORDERED.**

Dated: July 3 2019

CHARLES R. BREYER
United States District Judge